**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Tanaka L. Birdo, | Case No. 20-CV-1108 (SRN/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Mohammed Duluky, Jeremy Miller, and Common Bond, | |
| Defendants. | |

This action comes before the Court on Plaintiff Tanaka L. Birdo's Complaint [Doc. No. 1] and Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application") [Doc. No. 2]. For the following reasons, the Court recommends dismissing this action without prejudice and denying the IFP Application as moot.

**I.      BACKGROUND**

Birdo filed this action on May 6, 2020. (Compl. 1.) The Complaint names two defendants: Mohammed Duluky and Jeremy Miller. (*Id.* at 2.)[1] The caption of the IFP Application also lists "Common Bond" as a defendant (IFP Appl. 1); the Court construes this to refer to CommonBond Communities, a nonprofit organization that manages

---

[1] The Complaint initially spells this defendant's last name as "Dukuly," but the Complaint's factual allegations repeatedly refer to him as "Duluky." (*See* Compl. 2–4.) Because the Complaint uses "Duluky" more often, the Court assumes that this is the proper spelling.

residence communities in Minnesota and other states.  Though the Complaint itself does not list Common Bond as a defendant, the Court must construe pro se filings like Birdo's liberally.  *See, e.g.*, *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Court will thus treat Common Bond as an intended defendant in this matter.

As the Court understands the Complaint, Birdo lived for a period of time at the "Lydia House," a community managed by Common Bond.  (Compl. 3–4.)  Duluky and Miller apparently work for Common Bond in some way at Lydia House.  (*Id.* at 4.)  The Complaint's factual allegations consist of the following paragraph:

> Being a resident at the Lydia House owned by Common Bond.  I moved [there] 1-18-19[.]  After several days, my toilet was stopped up!  Could not use my toilet for three days.  I have a prostrate problem.  Take medicine for my problem.  Also Mohammed Duluky made several sexual advances towards me.  On 7-19-19 he [blew] kisses at me.  It's on camera[.]  Also Amber Phelps a counselor was present when he blow kisses at me.  Mice was in the building, pipes in my studio apartment making noise.  Several times water coming [through] my ceiling.  Apartment above me #315 move things around two, three, four AM in the morning keeping me awake.  Filed a grievance[,] nothing done.  Filed a grievance on Duluky, both of them never answered by Jeremy Miller, when I talked to him he tried to cover everything up!  Also I faced racial and selective discrimination.  Put out of television room 30 days because of Peter who's gay!  Duluky who's gay believed everything he said.  Staff member said I[] had a knife a lie cameras all over.  Was not allowed to have a German Shepard, when other residents had pit bulls.  Many unjust towards me.  Mainly because I would not engage[] in homosexuality.

(*Id.* at 3–4 (capitalization amended).)

2

For relief, Birdo seeks $900,000: $300,000 in "declaratory damages," $300,000 in compensatory damages, and $300,000 in punitive damages. (*Id.* at 5.)

## II.   ANALYSIS

### A.   Screening Standards

Rather than pay this action's filing fee, Birdo seeks permission to proceed in forma pauperis ("IFP"). After reviewing the IFP Application, the Court concludes that Birdo qualifies financially for IFP status. But a court will deny an IFP application—and dismiss an action—when the IFP applicant's complaint fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *see also Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[C]ontrary to plaintiffs' arguments on appeal, the provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service." (citing authorities)).

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the complaint's factual allegations and must draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). The complaint's factual allegations need not be detailed, but must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing a complaint's sufficiency, a court may disregard legal conclusions couched as factual allegations. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are to be construed

liberally, but still must allege sufficient facts to support the claims advanced. *See, e.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### B. Potential Federal-Law Claims

As a preliminary point, the Court observes that many of the Complaint's factual allegations seem to concern issues squarely within Minnesota state law—more specifically, statutes and regulations covering landlord/tenant disputes. For instance, the Court is unaware how Birdo's claims of a clogged toilet, noisy pipes, and disruptive neighbors implicate any federal-law causes of action.

Of course, the fact that some of Birdo's allegations only support state-law claims does not itself deprive this Court of possible jurisdiction over those claims. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." This means that if this Court has original jurisdiction over some of this action's claims, supplemental jurisdiction might exist for the others. The Court must therefore decide whether it has original jurisdiction over any of the potential claims.

Birdo asserts that this Court has jurisdiction over this action because of federal-question jurisdiction under 28 U.S.C. § 1331.[2] But the template form on which Birdo

---

[2] The other main jurisdictional alternative—diversity jurisdiction under 28 U.S.C. § 1332(a)(1)—does not apply here, as Birdo and both individual defendants appear to be Minnesota residents. (Compl. at 1–2). *See, e.g.*, *Lincoln Prop. Co. v. Roche*, 546 U.S.

4

prepared the Complaint asks what "federal constitutional, statutory or treaty right is at issue," and Birdo provides no response.  (Compl. 3 (capitalization amended).)  Even so, given this Court's obligation to construe pro se filings liberally, it will consider whether the Complaint's allegations plausibly allege any federal-law cause of action.

The Complaint seems to point to a potential violation of the Equal Protection Clause of the U.S. Constitution, namely, in Birdo's assertion that he "faced racial and selective discrimination." (*Id.* at 4.)  But the Court does not see how Birdo can bring constitutional claims against these Defendants.  If Defendants were governmental employees or governmental entities of some sort (or acting on behalf of or in conjunction with such employees or entities), Birdo could perhaps press a claim through 42 U.S.C. § 1983.  But to bring a § 1983 claim, a plaintiff must allege that the defendants have acted "under color of" state law.  *See, e.g.*, *Rehberg v. Paulk*, 566 U.S. 356, 366 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983)); *McKay v. City of St. Louis*, 960 F.3d 1094, 1099 (8th Cir. 2020) (citing *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)).  This requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal citations and quotation marks omitted); *see also, e.g.*, *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) (quoting *Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 421 (8th Cir. 2007)).  Nothing in the Complaint links any Defendant's conduct to any sort of

---

81, 89 (2005) (noting that § 1332(a)(1) diversity requires "complete diversity between all plaintiffs and all defendants").

governmental entity, and so Birdo has not properly pleaded that any problematic conduct toward him was under color of state law. The § 1983 remedy is thus unavailable here.

To be sure, there are federal civil-rights statutes that restrict private conduct, but Birdo does not point to any in the Complaint. In the Court's view, there is only one main federal-law possibility. Under 42 U.S.C. § 3604(b), part of the Fair Housing Act ("FHA"), it is illegal to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Birdo contends that Defendants discriminated against because of his race and because he is not gay. (*See* Compl. 3–4.) The FHA plainly covers race discrimination, and for present purposes, the Court will assume without deciding that it also covers sexual-orientation discrimination against individuals who are not gay. *See, e.g.*, *Walsh v. Friendship Vill. of S. Cty.*, 352 F. Supp. 3d 920, 926 (E.D. Mo. 2019) (noting caselaw split as to whether FHA applies to sexual-orientation discrimination); *cf. Bostock v. Clayton County*, 140 S. Ct. 1731, 1743 (2020) (holding that different federal civil-rights statute, Title VII of the Civil Rights Act of 1964, does bar discrimination against employees for being "homosexual or transgender").

Section 3604(b) claims generally arise under either a disparate-treatment theory or a disparate-impact theory. In a disparate-treatment case, a plaintiff "must establish that the defendant had a discriminatory intent or motive," while in a disparate-impact case, a plaintiff "challenges practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale." *Tex. Dep't of Hous. & Cmty.*

*Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2513 (2015) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotation marks omitted)); *see also Ellis v. City of Minneapolis*, 860 F.3d 1106, 1110 (8th Cir. 2017) (quoting *Tex. Dep't of Housing*).  The Complaint does not allege that Defendants' actions disproportionately affect African-Americans or heterosexuals; Birdo claims instead that he is being discriminated against personally.  The Court thus construes Birdo's § 3604(b) claim as one of disparate treatment.

As noted above, to state a § 3604(b) disparate-treatment claim, a plaintiff must "plausibly allege that defendants acted with discriminatory intent." *Hoyt v. City of St. Anthony Vill.*, No. 18-CV-2434 (PJS/ECW), 2019 WL 2212147, at *7 (D. Minn. May 22, 2019) (citing *Ellis*, 860 F.3d at 1112 n.3).  This Court has repeatedly held that a plaintiff fails to plausibly allege discriminatory intent where a complaint relies on conclusory allegations, fails to identify "similarly situated comparators who were treated more favorably," and does not "allege any other facts that would give rise to an inference of discriminatory intent." *Hoyt*, 2019 WL 2212147, at *7 (dismissing disparate-treatment FHA claim); *see also Jones v. Aeon & Affiliates*, No. 19-CV-2803 (DSD/BRT), 2020 WL 1930557, at *4 (D. Minn. Jan. 6, 2020) (same), *R. & R. adopted*, 2020 WL 1923190 (D. Minn. Apr. 21, 2020); *Hayes v. City of Saint Paul*, No. 16-CV-2926 (DWF/SER), 2017 WL 3382060, at *6 (D. Minn. May 18, 2017) (same), *R. & R. adopted*, 2017 WL 3381844 (D. Minn. Aug. 4, 2017).

Birdo's potential § 3604(b) claim suffers from these very problems.  Most of Birdo's assertions of discrimination are simply conclusory, and a court need not accept

conclusory allegations as true when reviewing a complaint. *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (citing cases). Furthermore, even when Birdo offers purported specifics about how he was discriminated against, he has not identified similarly situated comparators, nor has he alleged other facts that give rise to a discriminatory-intent inference.

For purposes of completeness, the Court notes that Birdo refers to alleged "sexual advances" made by Duluky. (Compl. 4.) The Eighth Circuit has indicated that a plaintiff can bring a sexual-harassment claim under the FHA, *see, e.g.*, *United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012), so Birdo's allegation raises the question of whether the Complaint plausibly alleges sexual harassment.

In the Court's view, it does not. In *Hurt*, the Eighth Circuit explained that:

> [s]exual harassment is actionable under the FHA when it creates a hostile housing environment or constitutes quid pro quo sexual harassment. A defendant creates a hostile housing environment by subjecting a victim to unwelcome sexual harassment, and the harassment was sufficiently severe or pervasive so as to interfere with or deprive the victim of her right to use or enjoy her home. Quid pro quo sexual harassment occurs when housing benefits are explicitly or implicitly conditioned on sexual favors.

*Id.* (quoting *Quigley v. Winter*, 598 F.3d 938, 946–47 (8th Cir. 2010) (internal quotation marks, brackets, and citations omitted)).

The Complaint does not meet these standards. The Complaint does not allege that anyone explicitly conditioned any housing benefits to Birdo on any sort of sexual favors. The Complaint does generically state that "many" people—possibly including Defendants, though Birdo is unclear here—were "unjust towards" him "because [he]

8

would not engage[] in homosexuality." (Compl. 4.) But this standalone—and conclusory—assertion does not provide this Court enough facts to conclude that Birdo has plausibly alleged a quid-pro-quo sexual-harassment claim.

This leaves hostile-housing-environment sexual harassment. Relevant here are Birdo's claims that "Duluky made several sexual advances towards [Birdo]," and specifically, that on July 19, 2019, Duluky "[blew] kisses" at Birdo. (*Id.*) The claim that Duluky made "several sexual advances" is itself underpled; Birdo pleads no facts explaining what this conduct was. As for Duluky's blowing kisses at Birdo on one occasion, the Court has little difficulty concluding that this conduct is not "sufficiently severe or pervasive" to be hostile-housing-environment sexual harassment.³ The Court thus concludes that Birdo has failed to plausibly allege a sexual-harassment claim under the FHA. Because this was the last plausible route for Birdo to plead a federal-law cause of action, the Court further concludes that the Complaint fails to plausibly allege any such causes of action.

---

³ This is particularly clear when considering Eighth Circuit cases concerning Title VII sexual-harassment claims, which rely on a similar sufficiently-severe-or-pervasive standard. *See, e.g.*, *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020) (affirming summary-judgment grant for defendants on Title VII sexual-harassment claim where relevant conduct included "one instance of unwelcome physical contact, one or two statements where [defendant] stated he could 'have [Plaintiff],' and several statements about how [Defendant] never should have hired a female and wanted to make [Plaintiff] cry); *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 687 (8th Cir. 2012) (affirming summary-judgment grant for defendants in Title VII sexual-harassment claim where relevant conduct included "complaints about [Defendants' employees'] poor personal hygiene, boasting about past sexual exploits, sporadic remarks of sexual vulgarity, and highly offensive but isolated instances of propositioning for sex").

### C.     Jurisdiction Over Remaining Claims

If the Complaint fails to plausibly allege any federal-law causes of action, then what remains are various state-law claims, presumably under Minnesota housing statutes or regulations. This raises the question of whether this Court should exercise supplemental jurisdiction over Birdo's state-law claims if the Court dismisses the federal claims.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Section 1367(c)(3) specifies, however, that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."

The Eighth Circuit has discussed these provisions as follows:

> A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity. [I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (citations and internal quotation marks omitted; brackets and ellipses in original).

10

The last sentence of the above quote is dispositive here. Under this Court's recommendation, Birdo's federal-law claims will be "eliminated" well before trial. There is no indication that this case is "unusual" so as to support exercising supplemental jurisdiction over the remaining state-law claims. The Court thus recommends declining to exercise supplemental jurisdiction over Birdo's state-law claims, and thus dismissing those claims without prejudice for lack of subject-matter jurisdiction.

### D. IFP Application

Because the Court recommends dismissal of all of the Complaint's claims, the Court further recommends that the IFP Application be denied as moot.

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. To the extent that Tanaka L. Birdo's Complaint, ECF No. 1, purports to bring claims based on federal law, the Complaint be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

2. To the extent the Complaint purports to bring claims based on state law, the Complaint be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

3. Birdo's Application to Proceed in District Court Without Prepaying Fees or Costs [Doc. No. 2] be **DENIED** as moot.

Dated: August 27, 2020         s/ *Hildy Bowbeer*
                               Hildy Bowbeer
                               United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).